UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

INTEGR8 FUELS INC.,

    Plaintiff,

  -v-                                                 No. 17 CV 2191-LTS

DAELIM CORP.,

    Defendant.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        On March 27, 2017, Plaintiff Integr8 Fuels Inc. ("Integr8") filed a Complaint against Defendant Daelim Corporation ("Daelim"), as well as a Motion, by Order to Show Cause, for a Preliminary Injunction and Temporary Restraining Order enjoining Daelim from pursuing arbitration against Integr8. (Docket entry nos. 1 (Complaint) & 9.) This Court ordered Daelim to show cause why a preliminary injunction should not issue. (Docket entry no. 3.) The parties submitted briefing pursuant to a schedule set forth in the Court's Order, and the Court heard oral argument on April 7, 2017. The parties also submitted supplemental post-argument letters on April 21 and 24, 2017. (Docket entry nos. 20 and 23.) The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331 and 9 U.S.C. section 203.

        The Court has carefully considered the submissions and arguments of both parties. For the reasons set forth below, Plaintiff's motion is denied. This Memorandum Opinion and Order sets forth the Court's findings of fact and conclusions of law in accordance with Federal Rules of Civil Procedure 52 and 65.

FINDINGS OF FACT

Plaintiff Integr8 is a seller of marine fuels to vessel owners and operators throughout the world. (Complaint ¶ 12.) Defendant Daelim is a vessel charterer of ships to be used in international trade. (Docket entry no. 7 (Declaration of Kim Jae Ho ("Ho Decl.")) ¶ 3.) Daelim entered into a charter party agreement with Korea Line Corporation ("KLC"), the disponent owner of the vessel M/T DL NAVIG8 (the "Vessel"), which is owned by DL Maritime S.A. ("Maritime"). (Id. ¶¶ 5-6.) Pursuant to the charter party, Daelim was required to keep the Vessel free and clear of encumbrances, including liens. (Id. ¶ 7 & Ex. 1, Clause 15.)

In October 2014, Daelim contracted with Grace Young International, Ltd. ("Grace") to provide a bunker stem to the Vessel in Hong Kong. (Id. ¶ 8 & Ex. 2.) Daelim paid Grace in full for the bunker stem, which was delivered as agreed. (Id. ¶¶ 10-14 & Exs. 3-4.) Grace, in turn, contracted with a corporation called Hitec to provide the bunker stem. (Docket entry no. 8 (Declaration of Karnan Thirupathy ("Thirupathy Decl.")) ¶ 12.) Hitec then contracted with Dynamic Oil Trading (Singapore) Pte Ltd. ("Dynamic") to provide the bunker stem. (Id. ¶ 12.) Dynamic then contracted with Plaintiff Integr8 to provide the bunker stem in Hong Kong. (Id. ¶ 13.)

The contract between Dynamic and Integr8 (id. Ex. DD (the "Integr8 Contract")) identifies the "Buyer" of the bunker stem as: "Dynamic Oil Trading (Singapore Pte Ltd) AND JOINTLY AND SEVERALLY OWNERS/MANAGING OWNERS/OPERATORS/ MANAGERS/DISPONENT OWNERS/CHARTERERS." (Integr8 Contract, p. 1.) Additionally, the Integr8 Contract provides that "Integr8 Fuels Inc. General Terms and Conditions (including the arbitration clause within those General Terms and Conditions) will apply to this contract." (Id.) The Integr8 Fuels Inc. General Terms and Conditions (Complaint

Ex. B (the "Integr8 GTC")) include an arbitration clause that provides, in pertinent part, that "[a]ny dispute arising under, in connection with or incidental to this Contract shall be heard and decided at New York City, New York State, by three persons." (Id. § 11.1)

In November 2016, Integr8 filed an action against Maritime and Dynamic in the Dubai Court of First Instance, alleging that Integr8 had not been paid for the bunker stem it supplied to the Vessel in Hong Kong pursuant to its contract with Dynamic.[1] (Thirupathy Decl. ¶ 2 & Ex. AA.) Integr8 moved in the Dubai court for an order arresting the Vessel and seeking a maritime lien for necessities, which motion was granted and an arrest ordered. (Id. ¶¶ 3-5.) The Vessel was arrested, and Maritime deposited the amount of the claim with the Dubai court in order to have the arrest lifted. (Id. ¶ 5.) The case in Dubai was dismissed and is currently on appeal. (Id. ¶ 9.)

Also in November 2016, solicitors in Dubai for KLC contacted Daelim to notify Daelim of the arrest of the Vessel, and Integr8's allegations that it had not been paid for the bunker stem. (Ho Decl. ¶ 15.) Daelim was notified that the Vessel's owners (KLC and/or Maritime) "would seek damages against Daelim as a result of Integr8's arrest of the Vessel in Dubai." (Ho Decl. ¶ 16.[2])

---

[1] Integr8 has also filed an action in this Court against Dynamic's parent company, OW Bunker Panama SA, Case No. 16 CV 4073-VSB, seeking to compel arbitration of Integr8's claim for non-payment. Although Defendant, in its supplemental briefing, claims that this separate litigation is relevant to the instant motion, the Court finds an adequate basis in law and fact here to deny Integr8's requested relief, and accordingly need not consider the significance, if any, of Integr8's claims in separate litigation.

[2] At oral argument, Plaintiff's counsel repeatedly characterized this allegation of fact as having been made on information and belief, which is inaccurate. (See, e.g., Transcript of April 7, 2017, Hearing and Oral Argument ("Tr."), at 27:12-14; 33:2-5.) Mr. Ho, an Assistant Manager at Daelim Corporation, states in his sworn Declaration that he is authorized to speak for Daelim on this issue and is personally familiar with the bunker stem. The statement of fact that Daelim was notified that the owners of the Vessel would

On February 14, 2017, Daelim served a demand for arbitration on Integr8. (Complaint ¶ 2 & Ex. A (the "Demand").) The Demand identifies the operative arbitration agreement as the one contained in the Integr8 GTC. (Demand, p. 1.) The Demand specifies several issues and claims to be put to the arbitrators: (1) "whether Integr8 has a valid maritime lien for necessaries under U.S. law against M/V DL NAVIG8;" (2) "a declaratory ruling alleviating [Daelim] from any and all liability for the aforementioned stem;" (3) "an anti-suit injunction enjoining any further litigation including that previously pending in Dubai on the above issues;" and (4) "in the alternative, indemnity in full for any liability Daelim incurs as a result of the Dubai or any other proceeding initiated by Integr8 in regards to this stem." (Id. p. 2.) At oral argument, the parties represented that arbitrators have been selected, and that the arbitration proceedings are on hold pending this Court's decision on Plaintiff's motion for a preliminary injunction. (Tr. 35:16-22.)

## CONCLUSIONS OF LAW

"A party seeking a preliminary injunction must either show that he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in his favor; and that an injunction is in the public interest; or he may show irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Am. Civil

---

seek damages against Daelim is not made on information and belief in the Ho Declaration, and accordingly the Court considers it to be a statement made from Ho's personal knowledge. (See generally Ho Decl. ¶¶ 1-2, 16.) In the absence of contrary evidence, and in the context of Daelim's subsequent efforts to resolve the question of its exposure under the Integr8 Contract, it is credible.

Liberties Union v. Clapper, 785 F.3d 787, 825 (2d Cir. 2015) (internal citation and quotation marks omitted).

Integr8's Complaint seeks a declaratory judgment that there is no enforceable arbitration agreement between Daelim and Integr8. In determining whether a dispute is arbitrable, the Court must address two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir.1996). As an initial matter, Integr8 asserts that the contractual arbitration clause here is insufficient to compel arbitration because there is no direct contractual relationship between Integr8 and Daelim.

The record currently before the Court shows that Integr8 entered into a written agreement, drafted by Integr8, with Dynamic. That agreement included a defined term, "Buyer," that covered Dynamic as well as the Charterers of the vessel. Daelim has proffered uncontested evidence indicating that Daelim was the Charterer of the vessel at the time Integr8 contracted with Dynamic. The Court accordingly concludes that the Integr8 Contract, which Integr8 drafted, embodies Integr8's agreement to arbitrate any dispute even incidental to the bunker stem transaction, with a diverse range of parties in interest that includes Daelim, as the Charterer of the vessel. That contract expressly incorporated the arbitration clause of the Integr8 GTC, which also defines the term "Buyer" to include the charterers of the vessel. Accordingly, the Court concludes that, on the present record, Integr8 has not demonstrated a likelihood of success, or even sufficiently serious questions going to the merits, on its claim that that it is not a party to an agreement to arbitrate with Daelim.

The Court therefore turns to Integr8's second argument, that even if there is a valid arbitration agreement, it does not cover the dispute Daelim identified in its demand for arbitration. Integr8's argument is unavailing. The arbitration clause in the Integr8 GTC is quite broad. It covers "any dispute arising under, in connection with or incidental to" the contract. In this connection, the Court notes that the Second Circuit has made clear that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . . Accordingly, federal policy requires us to construe arbitration clauses as broadly as possible." In re Am. Express Fin. Adv. Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011) (internal quotation marks and citations omitted). Furthermore, lower courts in this circuit, following the guidance of the Second Circuit, have distinguished between narrow arbitration clauses in the maritime context – for example, arbitration clauses that "provide that 'disputes between owners and charterers' must be arbitrated generally apply only to disputes between the particular parties identified in the clause" – and broader clauses, such as the one contained in the Integr8 GTC. See, e.g., Trade Arbed, Inc. v. M/V KANDALAKSHA, 2003 WL 22097460, at *3 (S.D.N.Y. June 23, 2003).

Here, Integr8, which is unquestionably a sophisticated party, drafted an arbitration agreement with a broad arbitration clause that purports to obligate a broad range of parties with interests in their transactions to arbitrate a broad range of issues touching on Integr8's transactions. The arbitration clause explicitly embraces disputes that are merely "incidental to" the contract in addition to those "arising under" the contract. The Court, accordingly, concludes that the scope of issues embraced by the plain language of the arbitration clause is sufficiently broad to encompass the dispute Daelim identifies in its demand for arbitration. Daelim seeks to arbitrate a dispute arising from a contractual chain that includes the Integr8 – Dynamic contract containing the arbitration clause, the outstanding liability under which was the apparent predicate

for Integr8's Dubai action against KLC, which has asserted a claim against Daelim for indemnity. On the record currently before the Court, the Court concludes that Daelim's claims are at the very least "incidental to" the contract, as Integr8's actions underlying Daelim's claims would not have occurred but for the existence of the contract.

The Court accordingly concludes that Integr8 has not demonstrated a likelihood of success, or even sufficiently serious questions going to the merits to make them fair grounds for litigation, on its argument that Daelim's demand for arbitration was outside of the scope of the arbitration agreement in question.

The Court further concludes that Integr8 has not shown that the balance of equities tips in its favor, nor that irreparable harm would result in the absence of injunctive relief. The one case Integr8 identifies for the proposition that irreparable harm could result from permitting arbitration in similar circumstances to these, <u>Tremont Capital Management Corporation v. Parnell</u>, 2005 WL 1561470 (S.D.N.Y. July 1, 2005), is inapposite, because in that case the Court concluded that the petitioner had demonstrated a likelihood of success on its contention that the claims at issue were not arbitrable, which is not the case here. The Court accordingly concludes that Integr8 has not shown that the balance of equities tips in its favor, nor that irreparable harm would result were the arbitration to proceed.

CONCLUSION

For the foregoing reasons, Integr8's motion for a preliminary injunction and temporary restraining order is denied.

This Memorandum Opinion and Order resolves docket entry no. 9.

SO ORDERED.

Dated: New York, New York
April 25, 2017

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge